USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11-30-06

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

ISPAT INLAND, INC.,                 :

               Plaintiff,      :     05 Civ. 5401 (BSJ)(HBP)

  -against-                         :     MEMORANDUM OPINION
                                       AND ORDER
KEMPER ENVIRONMENTAL, LTD.,         :

               Defendant.      :

------------------------------------X

        PITMAN, United States Magistrate Judge:

I. Introduction

        Defendant Kemper Environmental, Ltd ("Kemper") moves for sanctions based on defendant's alleged perjury and spoliation of evidence (Docket Item 41). For the reasons set forth below, Kemper's motion is denied in all respects.

II. Facts

        The pending motion is primarily based on events that occurred during the deposition of Marc Jeske, an attorney in Ispat Inland, Inc.'s ("Ispat's") law department, on August 17, 2006.

        During the initial phase of his deposition, Kemper's counsel asked Jeske a number of questions concerning what Jeske had done to prepare for the deposition. Among other things, Jeske testified that he had reviewed 15-20 documents on three

occasions (Transcript of the Deposition of Marc Jeske, conducted on August 17, 2006 ("Jeske Tr."), at 30-31). Jeske testified that the only documents that refreshed his recollection were certain 10-K filings and letter he had sent to Joyce Mims (Jeske Tr. at 35). After eliciting this testimony, Kemper's counsel left the subject and questioned Jeske about a deposition transcript that Jeske had also reviewed (Jeske Tr. 40-47).

After questioning Jeske about the deposition transcript, Kemper's counsel asked Jeske additional questions about the documents he had reviewed and elicited the following testimony:

> Q. Now, you talked about -- let's get it clear. Here's what you reviewed: A week ago, you said you and Mr. Scherschel and counsel looked at documents. Where did you look at these documents? You said the three of you came up with it.
>
> . . . .
>
> Q. That was your testimony, not mine. If you want to change it at any point in time.
>
> A. Where did we look at the documents?
>
> Q. You said collectively we came up with 20 documents. That was your testimony. I could have it read back. You said collectively you came up with 20 documents.
>
> A. That was in our office.
>
> Q. [Plaintiff's counsel] was there a week ago and Mr. Scherschel and you?
>
> A. Yes.
>
> Q. Okay. So you got you in a room and did [plaintiff's counsel] bring documents that day?

A.  I believe so.

Q.  And did Mr. Scherschel have other documents?

A.  I believe so.

Q.  Don't look at him.  This is you and me.  He doesn't count.  And how did you -- how did you go about the process of selecting which documents you should use to prepare for your dep?

[A.]  I had conversations with both of them.

Q.  And then did you go look for other documents in addition to the documents [plaintiff's counsel'] furnished you and Mr. Scherschel furnished you?

A.  No.

. . . .

Q.  You got the correspondence, you got e-mails, you got the deposition.  How long did that meeting last?  Where did it occur by the way?

A.  One South Dearborn.

Q.  Big building.  Where?  Was it in a conference room or was it in one of your offices?

A.  It was in our conference room.

Q.  Now, how long did that meeting last?

A.  An hour and a half.

Q.  And that was your very first meeting where you met -- when you started your dep prep?

A.  Right.

Q.  When was the next meeting where you had your dep prep?

A.  The day before yesterday.

. . . .

>    Q.  What documents did you review that day?
>
>    A.  The same group of 20 or so documents.
>
>    Q.  Were they segregated -- when you got the group of 20 documents that you used to refresh your recollection, were they left in a certain place in your office, these 20 documents?  Of course they were.
>
>    A.  Yeah.
>
>    Q.  Where were they at?  I mean like on a shelf or in a file or something like that?
>
>    A.  Probably sitting on a shelf.
>
>    Q.  Okay.  I call for the -- just hold on.  I call for these documents to be brought over because I want to test him to have him look at the documents that refreshed his recollection so I could cross examine him on it.  They're ten minutes away and under the rules, I have a right to receive these documents.
>
>    [Plaintiff's Counsel:]  We'll consider it during the break.

(Jeske Tr. 48-52).

Although documents from Jeske's office were never produced during the deposition, Ispat's counsel subsequently identified the documents that Jeske had reviewed as the exhibits to the Scherschel deposition (Jeske Tr. 78).  Kemper's counsel had the Scherschel exhibits in his actual possession while questioning Jeske (Jeske Tr. 86).  In fact, Kemper's counsel gave the Scherschel exhibits to Jeske and had him identify the specific documents that had refreshed his recollection (Jeske Tr. 430).

4

Several hours after Jeske's testimony concerning his review of documents, Jeske made the following disclosure which he characterized as a "clarification:"

> A. I was recalling when you were asking me earlier about my review of the documents in preparation for this deposition. I misunderstood what you were saying. Upon thinking about it over lunch and over the course of the last few hours, the place where I reviewed those documents was in my office, but I no longer have the documents.
>
> . . . .
>
> Q. Where are the documents now?
>
> A. I took the documents home, I carried them around in my briefcase; and on the way here, I thought that I no longer needed the documents.
>
> Q. So you just threw them out?
>
> A. Yeah.
>
> Q. When and where did you throw them out?
>
> . . . .
>
> A. I threw them out before I came in the building.
>
> Q. Where did you throw them out?
>
> . . . .
>
> A. Downstairs in one of the trash cans.
>
> . . . .
>
> Q. That was before or after you met with [plaintiff's counsel]?
>
> . . . .
>
> A. It was after.

(Jeske Tr. 398-400). Jeske confirmed, however, that copies of all the documents that he had discarded were in the actual possession of Kemper's counsel at the deposition (Jeske Tr. 431).

Based on the foregoing testimony, Kemper claims that Jeske committed perjury and improperly destroyed critical evidence.

III. Analysis

The principal problem with plaintiff's motion is that Jeske's deposition testimony does not establish either perjury or the destruction of documents that Ispat or Jeske was obligated to preserve.

Although Kemper interprets Jeske's testimony at the outset of his deposition as stating that the documents he had reviewed were in his office at the time of the deposition, the record reflects that Kemper never asked Jeske that question and that Jeske never gave that testimony. As quoted above, Jeske was asked questions concerning the documents he had reviewed in the past tense:

> Q. Were [the documents] segregated -- when you got the group of 20 documents that you use to refresh your recollection, were they left in a certain place in your office, these 20 documents? Of course they were.
>
> A. Yeah.
>
> Q. Where were they at? I mean like on a shelf or in a file or something like that?

6

           A. Probably sitting on a shelf.

(Jeske Tr. 51-52 (emphasis added)). The former question appears to be asking Jeske what he did with the documents after he first got them and his response was that they <u>were</u> <u>then</u> left in his office. The second question appears to be asking where the documents were at some unspecified time in the past. If Kemper's counsel intended to elicit the then-present location of the documents, he would have used the present tense of the verb to be, *i.e.* "where <u>are</u> the documents," and not its past tense, *i.e.*, "where <u>were</u> the documents."[1] Thus, Jeske never lied about the location of the documents he had reviewed, and it appears that his answers to the specific questions asked were literally true. <u>See</u> <u>generally</u> <u>Bronston v. United States</u>, 409 U.S. 352, 360 (1973) (testimony that is literally true does not constitute perjury).

           In addition, Jeske's discarding of the documents he reviewed, although odd, does not constitute spoliation. "Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." <u>West v. Goodyear Tire & Rubber Co.</u>, 167 F.3d 776, 779 (2d Cir. 1999). Although Jeske did discard the specific copies of the documents that he

---

[1] It is noteworthy that when asking Jeske about the location of the deposition transcript he had reviewed, Kemper's counsel did use the present tense (Jeske Tr. 40 ("And where is that transcript now?")). No similar, present-tense questions were posed to Jeske concerning the documents he had reviewed.

7

reviewed, duplicates were available to Kemper's counsel and in his actual possession at the deposition. Kemper cites no evidence that the specific copies Jeske reviewed were different in any respect from the copies Kemper's counsel possessed. Under these circumstances, Jeske's decision to discard the documents, although odd, does not constitute spoliation.

Kemper's right, pursuant to Federal Rule of Evidence 612, to cross-examine Jeske concerning the documents that refreshed his recollection does not alter the outcome. Neither Kemper's research nor my own has disclosed any authority holding that Rule 612 creates an obligation to preserve the documents that refreshed a witness's recollection so long as identical copies of those documents are available, as they were here. Although I can understand Kemper's counsel's dismay at Jeske's discarding of the documents, it would be inappropriate to impose any sanction for that conduct in the absence of either a violation of a clearly established rule or conduct that intentionally frustrated discovery. In this case, Ispat identified the documents Jeske reviewed early on in the deposition (Jeske Tr. 78), and Kemper had ample opportunity to examine Jeske concerning those documents. There was no frustration of Kemper's examination of Jeske.[2]

---

[2]My decision that Jeske is not guilty of spoliation is, of course, limited to the specific facts of this case. I am not
(continued...)

8

Kemper cites a number of other instances of alleged "misconduct" by Ispat in an effort to establish that Jeske's alleged misconduct is part of pattern. See generally McMunn v. Mem'l Sloan-Kettering Cancer Ctr., 191 F. Supp.2d 440, 446 (S.D.N.Y. 2002). I do not understand Kemper to be claiming that these other acts of alleged misconduct independently warrant relief, and since I find that Jeske is not guilty of any discovery misconduct, I need not address these other acts.

IV. Conclusion

Accordingly, for all the foregoing reasons, Kemper's motion for sanction (Docket Item 41) is denied in all respects.

Dated:  New York, New York
        November 30, 2006

SO ORDERED

/s/ Henry Pitman
HENRY PITMAN
United States Magistrate Judge

Copies transmitted to:

Robert A. Salerno, Esq.
Morrison & Forrester
2000 Pennsylvania Avenue, N.W.
Washington, D.C.  200006-1888

---

[2] (...continued)
suggesting that a witness's destruction of documents that he or she reviewed in preparation for testifying can never constitute spoliation.

9

Camilo Cardozo, Esq.
DLA Piper Rudnick Gray Cary US LLP
1251 Avenue of the Americas
New York, New York   10020

David M. Pollock, Esq.
Melito & Adolfsen, P.C.
233 Broadway
Eighth Floor
New York, New York   10279

Edward F. Ruberry, Esq.
Mitchell Rose, Esq.
Lisa Thaviu, Esq.
Bollinger, Ruberry & Garvey
500 West Madison Street
Suite 2300
Chicago, Illinois   60661