```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
ISPAT INLAND, INC.,                 :
                 Plaintiff,         :    05 Civ. 5401 (BSJ)(HBP)
      -against-                     :    MEMORANDUM OPINION
                                         AND ORDER
KEMPER ENVIRONMENTAL, LTD.,         :
                 Defendant.         :
-----------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7-31-07

PITMAN, United States Magistrate Judge:

I. Introduction

Defendant Kemper Environmental, Ltd ("Kemper") moves to reopen certain depositions (Docket Item 48). For the reasons set forth below, Kemper's motion is denied.

II. Facts

This is an action seeking damages and declaratory relief for the alleged breach of an environmental liability insurance policy.

The insurance policy, Kemper Environmental Response, Compensation and Liability Insurance Policy No. 4LY000143 (the "policy"), was purchased by Inland Steel Industries ("ISI") pursuant to an agreement under which Ispat International, N.V. ("IINV") acquired Inland Steel Company ("ISC") from ISI (Complaint ("Comp.") ¶ 7). Plaintiff Ispat Inland, Inc. ("Ispat") is

the entity that resulted from the acquisition (Comp. ¶ 10). The policy was issued on or about March 6, 1998 by defendant and names ISC, IINV, and ISI as insureds (Comp. ¶ 9).

Ispat contends that Kemper breached its insurance contract by refusing to admit coverage and refusing to make payments for liability incurred by Ispat in the settlement of a Natural Resources Damage Assessment ("NRDA"). Ispat further contends that Kemper breached the policy by refusing to pay the legal expenses incurred by Ispat in connection with the investigation and defense of the NRDA. Kemper's amended answer denies Ispat's allegations, raises multiple affirmative defenses, and contends that the policy imposes no duties or obligations on it to indemnify or defend Ispat for the costs of the underlying claims at issue.

Kemper seeks documents and deposition testimony relating to Ispat's environmental and/or liability insurance that applied to the Indiana Harbor facilities, the NRDA, and the Supplemental Environment Project ("SEP") (Kemper's Re-filed Supplement to Motion to Compel Discovery, undated[1] ("Kemper Supp. Mtn. to Compel"), ¶¶ 8-9). I previously resolved several aspects of Kemper's motion by oral rulings made in open court or in the

---

[1] Kemper's supplemental motion was electronically re-filed with the Court on October 13, 2006. Although the supplemental motion is undated, it appears that the supplemental motion was served on August 1, 2006 (see Transcript of Hearing, dated August 14, 2006 ("8-14-06 Tr."), at 2).

2

course of recorded conference calls. Specifically, I already ruled on Kemper's motion to: (1) compel Ispat to produce responsive documents that Ispat is allegedly withholding (Conference call held on September 13 and 14, 2006), and to produce these documents in electronic format (Order dated August 16, 2006); (2) compel Ispat to produce Thomas Barnett for a deposition (Order dated September 15, 2006); and (3) reconvene the depositions of certain Ispat witnesses in order to question them about documents that were allegedly produced in an untimely manner (Order dated September 15, 2006).

The aspects of Kemper's motion that remain unresolved are its requests to: (1) reopen the deposition of Mathew Scherschel and "any further witnesses" to answer questions concerning certain meetings; and (2) reopen the deposition of any Ispat witnesses who were instructed not to answer questions on the ground of privilege (Kemper Supp. Mtn. to Compel, ¶ 29).

III. <u>Analysis</u>

    A. <u>Reopening Mathew Scherschel's Deposition</u>

Kemper first seeks to reopen the deposition of Ispat's in-house counsel, Mathew Scherschel, which was taken on July 27, 2006, and "any further witnesses to answer any questions pertain-

ing to communications within the G-9 meetings"[2] (Kemper Supp. Mtn. to Compel, ¶ 29).[3] Kemper claims that Ispat's counsel improperly instructed Scherschel not to identify what topics were discussed at the G-9 meetings on the ground of privilege. Kemper argues that the assertion of privilege was improper because third parties attended these meetings and the questions posed to Scherschel sought only a description of the topics discussed at the meeting, not the advice of counsel (Kemper Supp. Mtn. to Compel, ¶ 27).

Ispat argues that the assertion of privilege regarding the content of G-9 meetings was proper because Scherschel was the attorney who represented Ispat in the NRDA matter (Ispat Inland Inc.'s Opposition to Kemper's Supplemental Motion to Compel Discovery, dated August 10, 2006 ("Ispat Opp. to Supp. Mtn."), at 11). Ispat argues, therefore, that the content of these meetings would be protected by the so-called joint defense privilege or common interest rule. In addition, Ispat argues that Schershel

---

[2] G-9 refers to a group of nine companies, including Ispat, which worked jointly to defend the NRDA matter.

[3] Kemper also asserts that Ispat's counsel improperly instructed Scherschel not to answer questions concerning: (1) materials he reviewed in preparation for the deposition; (2) conversations he had with Marc Jeske, Ispat's other in-house counsel; and (3) letters written by Jeske regarding Ispat's position on its liability in the NRDA (Kemper Supp. Mtn. to Compel, ¶ 27). However, Kemper does not move to compel Scherschel to answer questions on these topics (see Kemper Supp. Mtn. to Compel, ¶ 29).

need not reveal discussions that occurred during the G-9 meetings because these discussions are protected by the attorney work-product doctrine.

The joint defense privilege or common interest rule is not really a separate privilege.  Rather, it is a limited exception to the general rule that the attorney-client privilege is waived when a protected communication is disclosed to a third party outside the attorney-client relationship.  See United States v. United Tech. Corp., 979 F. Supp. 108, 111 (D. Conn. 1997).  As explained in United States v. Schwimmer, 892 F.2d 237, 243-44 (1989):

> The joint defense privilege, more properly identified as the "common interest rule," see generally Capra, The Attorney-Client Privilege in Common Representations, 20 Trial Lawyer Quarterly, Summer 1989, at 20, has been described as "an extension of the attorney client privilege," Waller v. Financial Corp. of Am., 828 F.2d 579, 583 n.7 (9th Cir. 1987).  It serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel.  See United States v. Bay State Ambulance and Hosp. Rental Serv., 874 F.2d 20, 28 (1st Cir. 1989).  Only those communications made in the course of an ongoing common enterprise and intended to further the enterprise are protected.  Eisenberg v. Gagnon, 766 F.2d 770, 787 (3rd Cir.), cert. denied, 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985); Matter of Bevill, Bressler & Schulman Asset Management Corp., 805 F.2d 120 (3d Cir. 1986).  "The need to protect the free flow of information from client to attorney logically exists whenever multiple clients share a common interest about a legal matter," Capra, 20 Trial Lawyers Quarterly at 21 (citation omitted), and it is therefore unnecessary that there be actual litigation in progress for the common interest rule of the attorney-client privilege

5

>   to apply, United States v. Zolin, 809 F.2d 1411, 1417 (9th Cir. 1987), vacated in part on other grounds, 842 F.2d 1135 (9th Cir. 1988) (en banc), aff'd in part and vacated in part on other grounds, 491 U.S. 554, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989).

The common interest rule may apply where multiple parties are represented by multiple counsel so long as the parties share a common interest in a legal matter. Walsh v. Northrop Grumman Corp., 165 F.R.D. 16, 18 (E.D.N.Y. 1996); Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 160 F.R.D. 437, 447 (S.D.N.Y. 1995).

During the hearing held on August 14, 2006, I concluded, on the record before me, that the discussions at the G-9 meetings were protected as joint work-product (8-14-06 Tr. at 84). I also stated at the hearing that because the record was not complete in this regard, my ruling was without prejudice to a renewed application by Kemper and a renewed submission by Ispat (8-14-06 Tr. at 84). Although Kemper re-filed its motion, it did not supplement its papers with either additional legal authority or any evidence bearing on the work-produce issue; it did not even specifically identify the instances in which Schershel was allegedly improperly instructed not to answer questions regarding the meetings. Since Kemper's counsel has not accepted my invitation to supplement the record, there is no reason to revisit my prior ruling that the discussions at the G-9 meetings are protected.

6

Kemper also moves to compel "any further witnesses" to answer questions regarding discussions at the G-9 meetings. However, Kemper does not identify any other witness who were instructed not to answer questions regarding the meetings. Therefore, this aspect of Kemper's motion is also denied.

    C.  Reopening Depositions to Answer Questions Concerning Matters <u>that Ispat Claims Are Privileged</u>

Kemper makes two arguments in support of its motion to reopen the depositions of Ispat witnesses who did not answer questions concerning certain communications on the ground of privilege. First, Kemper claims that Ispat waived any privilege applicable to the communications by placing the communications "at issue." Second, Kemper contends that even if Ispat has not placed the communications "at issue," the communications were never protected by any privilege (Kemper Supp. Mtn. to Compel, ¶ 29).

> It is well established doctrine that in certain circumstances a party's assertion of factual claims can, out of considerations of fairness to the party's adversary, result in the involuntary forfeiture of privileges for matters pertinent to the claims asserted. <u>See</u>, <u>e.g.</u>, <u>United States v. Nobles</u>, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975); <u>United States v. Bilzerian</u>, 926 F.2d 1285 (2d Cir. 1991). The loss of the privilege in these circumstances is sometimes described as <u>implied waiver</u>, <u>see</u>, <u>e.g.</u>, <u>In re Grand Jury Proceedings</u>, 219 F.3d 175, 182-84 (2d Cir. 2000); <u>Bilzerian</u>, 926 F.2d at 1293, sometimes as "<u>at issue</u>" waiver because it results from the party having placed a contention at issue, <u>see</u>, <u>e.g.</u>, <u>Granite Part-</u>

7

>ners, L.P. v. Bear, Stearns & Co., Inc., 184 F.R.D. 49, 54 (S.D.N.Y. 1999); Worthington v. Endee, 177 F.R.D. 113, 116-117 (N.D.N.Y. 1998); 6 Moore's Federal Practice 26.70[6][c] at 26-226 (3d ed. 1997) ("A party also impliedly waives work product protection if it places the substance of the documents for which the protection is claimed at issue.").

John Doe Co. v. United States, 350 F.3d 299, 302 (2d Cir. 2003) (emphasis in original). However, Kemper has not shown that Ispat has placed any communication that would otherwise be privileged at issue, or that Ispat has, in any way, affirmatively relied on communications with counsel. Thus, Kemper has not established the applicability of the "at issue" waiver.

Kemper does not identify the specific Ispat witnesses or the questions that these Ispat witnesses allegedly improperly refused to answer on the grounds that the communications were privileged. Because Kemper has not demonstrated that Ispat is improperly claiming a privilege over certain communications, depositions in which witnesses were questioned about putatively privileged communications will not be reopened.

Kemper's second argument suffers from similar flaws. Although it makes a broad brush challenge to Ispat's assertion of privilege, Kemper does not specify the Ispat witnesses who allegedly invoked privilege improperly, nor does it identify the specific invocations of privilege that it claims were improper. Although the proponent of a privilege undoubtedly bears the ultimate burden of demonstrating the privilege's applicability,

8

von Bulow by Auersperg v. von Bulow, 811 F.2d 136, 144 (2d Cir. 1987); In re Grand Jury Subpoena Dated Jan. 4, 1984, 750 F.2d 223, 224 (2d Cir. 1984); In re Horowitz, 482 F.2d 72, 82 (2d Cir. 1973), the party challenging the invocation of a privilege must, at least, identify what testimony is in issue and explain why it believes the assertion of privilege is improper. See ECDC Environmental v. N.Y. Marine & Gen. Ins. Co., 96 Civ. 6033 (BSJ)(HBP), 1998 WL 614478 at *3-*4 (S.D.N.Y. June 4, 1998). Without this information, it is simply impossible to begin to assess Kemper's argument. Since Kemper has not even identified the specific assertions of privilege it is challenging and has not explained why it believes the testimony is not privileged, its second argument also fails.

IV. Conclusion

For all the foregoing reasons, Kemper's motion is denied.

Dated:   New York, New York
         July 31, 2007

SO ORDERED

HENRY PITMAN
United States Magistrate Judge

Copies transmitted to:

Edward F. Ruberry, Esq.
Bollinger, Ruberry & Garvey
Suite 2300
500 West Madison Street
Chicago, IL 60661

Robert A. Salerno, Esq.
Morrison & Foerster LLP
Suite 5500
2000 Pennsylvania Ave. NW
Washington, DC 20006